1   ROB BONTA
    Attorney General of California
2   ANYA M. BINSACCA
    Supervising Deputy Attorney General
3   IRAM HASAN
    DAVID GREEN
4   JENNIFER E. ROSENBERG
    Deputy Attorneys General
5   State Bar No. 275496
      300 South Spring Street, Suite 1702
6     Los Angeles, CA 90013
      Telephone: (213) 269-6617
7     Fax: (916) 731-2124
      E-mail: Jennifer.Rosenberg@doj.ca.gov
8   *Attorneys for Defendants California Secretary of*
    *State Shirley Weber and Governor Gavin Newsom*
9

10            IN THE UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                      EASTERN DIVISION

13

14

15  **STEVE HILTON**,                  8:25-cv-01988-KK-E

16                     Plaintiff,      **DEFENDANTS' OPPOSITION TO
                                       PLAINTIFF'S EX PARTE
16                                     APPLICATION FOR ORDER
17            v.                       SHORTENING TIME TO HEAR
                                       PLAINTIFF'S MOTION FOR
18  **SHIRLEY WEBER, in her official   PRELIMINARY INJUNCTION
    capacity as California Secretary of**
    **State, GOVERNOR GAVIN**
19  **NEWSOM, in his official capacity**,  Judge:      Hon. Kenly Kiya Kato
                                       Action Filed: Sept. 4, 2025
20                     Defendants,

21

22  And the **LEGISLATURE OF
    CALIFORNIA**,
23

24                     Real Party in Interest.

25

26

27

28

# INTRODUCTION

More than two months ago, Plaintiff Steve Hilton promised to file a lawsuit in federal court to challenge what would become known as Proposition 50 ("Prop 50")—a legislatively referred constitutional amendment proposal that will allow California voters to choose in a November 4, 2025 Statewide Special Election whether to amend the California Constitution to adopt new congressional district maps for the 2026, 2028, and 2030 elections.[1]  Thirty days after threatening to sue and two weeks after Prop 50 was approved for placement on the ballot, Plaintiff filed his complaint challenging Prop 50, naming Governor Gavin Newsom and Secretary of State Shirley N. Weber as defendants ("Defendants").  But he did not move for any emergency relief at that time, nor did he act diligently to serve Defendants with the complaint.  ECF Nos. 15 & 16.  Instead, last Friday—after early voting had already begun in the Special Election—Plaintiff filed a motion for a preliminary injunction seeking to halt California voters from voting on Prop 50 and setting a hearing on his motion for November 7, 2025.  ECF No. 17 & 17-1.  He did not serve a copy of that motion on Defendants until Monday, October 6.  Yesterday, Plaintiff filed an amended notice of motion setting the hearing date for his preliminary injunction earlier than originally noticed.  ECF No. 20.  And today, Plaintiff filed an ex parte application asking this Court to expedite the hearing on his motion to a date prior to the November 4, 2025 Special Election.  ECF No. 27.  Plaintiff's ex parte request, if granted, would severely shorten Defendants' time to respond to the preliminary injunction motion they received on Monday.

The Court should reject Plaintiff's attempt to advance the hearing on his motion for a preliminary injunction.  Ex parte applications are solely for extraordinary relief.  *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp.

---

[1] Steve Hilton, *Opinion: Why I'm launching a legal war against California Democrats' unconstitutional power grab*, Fox News, Aug. 5, 2025, https://tinyurl.com/ye8456v2.

488, 488 (C.D. Cal. 1995). The sole cause of Plaintiff's purportedly urgent need for an expedited hearing is Plaintiff's own failure to timely file a noticed motion for interim relief at any time in the six weeks since Prop 50 was approved for placement on the ballot. Defendants thus respectfully request that the Court deny Plaintiff's application, vacate the re-noticed November 6, 2025 hearing date, and issue an order setting a hearing on Plaintiff's motion for a preliminary injunction on November 13, 2025 or any available hearing date thereafter, with standard briefing deadlines that correspond to the new hearing date.

## RELEVANT BACKGROUND

**California's redistricting efforts.** California voters have the power to amend California's Constitution by approving legislatively referred constitutional amendments. *See* Cal. Const. art. XVIII, § 4. This power extends to amending that portion of the California Constitution—article XXI—that governs how California draws congressional district maps. *Legislature v. Deukmejian*, 34 Cal. 3d 658, 680 (1983). After Texas redrew its congressional district lines mid-decade to provide Republicans a partisan advantage, several other states considered doing likewise. California is just one example. Days before Texas officially enacted its law to redraw its congressional district map, the California Legislature proposed a constitutional amendment to allow California to do the same. Known as the Election Rigging Response Act, Assem. Const. Amend. No. 8, 2025 Cal. Stat., ch. 156 ("ACA 8" or "the ERRA," filed with the Secretary of State on August 21, 2025), the proposed amendment would allow the use of a new congressional district map for the 2026, 2028, and 2030 congressional elections and would override any and all other state constitutional provisions that would otherwise prevent use of this new map. *See* ACA 8 § 4(b) (new map will be used "notwithstanding any other provision of this Constitution or existing law"). *If* and *only if* adopted by the voters during the November 4, 2025 Statewide Special Election—ACA 8 will amend

2

Defendant's Opposition to Plaintiff's Ex Parte Application for Order Shortening Time to Hear Plaintiff's Motion for Preliminary Injunction (8:25-cv-01988-KK-E)

Article XXI of the California Constitution to temporarily replace the independent Citizens Redistricting Commission's regular decennial redistricting with new maps described in Assembly Bill 604 ("AB 604"), 2025 Cal. Stat., ch. 96. *See* ACA 8 § 4(b); Cal. Const. art. XVIII, §§ 1, 4.[2]

Voting on Prop 50 in the Special Election is already underway. On or around September 5, 2025, California counties transmitted ballots and balloting materials to absent military and overseas voters who requested them. *See* Declaration of Jana Lean ("Lean Decl.") ¶ 6. Counties began mailing ballots to other voters on or before October 6, 2025, and thus other voters have already received or will soon receive a vote-by-mail ballot. *Id*. ¶ 7. And by yesterday, October 7, 2025, counties had opened ballot drop-off locations. *Id.* ¶ 8. Because California voters can begin voting as soon as they receive their ballots, voting in the Special Election has already started, and indeed some ballots from both domestic and overseas voters have already been returned. *Id.* ¶¶ 9, 10. Before this Court rules on Plaintiff's application to shorten time or motion for a preliminary injunction, California voters who were registered to vote by October 6, 2025, will have already had an opportunity to cast their votes on Prop 50.

**Plaintiff waited three weeks after filing this lawsuit before he even attempted to serve Defendants.** Plaintiff filed his complaint on September 4, 2025, two weeks after Prop 50 was approved for placement on the ballot. *See* ECF No. 1. However, Plaintiff delayed three full weeks in attempting to effectuate proper service, and failed entirely to serve a copy of the complaint as required under Federal Rule of Civil Procedure 4(c)(1). Declaration of Jennifer E.

---

[2] The Legislature approved ACA 8's referral to the voters and placement of Prop 50 on the ballot as part of a legislative package that included two related bills: AB 604 (describing the congressional districts that will be used if voters approve Prop 50 in the Special Election) and Senate Bill No. 280 ("SB 280"), 2025 Cal. Stat., ch. 97 (setting the Special Election and outlining processes and timelines related to the Special Election and the June 2, 2026 statewide primary election).

3

Defendant's Opposition to Plaintiff's Ex Parte Application for Order Shortening Time to Hear Plaintiff's Motion for
Preliminary Injunction (8:25-cv-01988-KK-E)

Rosenberg ("Rosenberg Decl.") ¶¶ 2-4.  Nor did Plaintiff request a waiver of service.  *Id.* ¶ 4.  Instead, Defendants' counsel reached out to Plaintiff's counsel on September 24, 2025, to notify them of Plaintiff's failure to serve Defendants and offer to waive service under Rule 4(d).  *Id.*; *see also* ECF Nos. 15 & 16.

**Plaintiff has already unilaterally changed the hearing date.**  Under the Central District's Local Rules, a notice of motion must be filed with the Clerk not later than 28 days before the date set for hearing.  *See* Local Rule 6-1.  Opposing papers must be filed not later than 21 days before the hearing.  *See* Local Rule 7-9.  Reply papers, if any, must be served and filed not later than 14 days before the hearing.  *See* Local Rule 7-10.  Under the Court's standing order in this case, motions are heard by the Court *only* on Thursdays.  *See* ECF No. 5 at p. 5.

Plaintiff filed his preliminary injunction motion on Friday, October 3, 2025, and originally noticed his motion with a hearing date of Friday, "November 7, 2025, at 9:30 a.m., or as soon thereafter as the matter may be heard."  ECF Nos. 17 at p. 1, 17-1.  The next Thursday hearing day following November 7  would be November 13.  However, on October 7—four days after filing his motion—Plaintiff filed an amended notice setting the hearing date *earlier*, on November 6.  *See* ECF No. 20.  Plaintiff did so despite Defendants having requested that, if Plaintiff filed an amended notice, he designate a date *after* November 7, 2025, such as November 13.  Rosenberg Decl., ¶ 7.  Just hours later, the court clerk issued a notice of deficiency on Plaintiff's original motion notice, stating that the "[m]otion is noticed for incorrect date" and that the Court might issue an order amending or correcting the document, ordering it stricken, or taking other action.  ECF No. 21.  Thus, it is currently unclear when Defendants must respond to Plaintiff's motion for preliminary injunction and what hearing date applies.

**Service of Plaintiff's motion for a preliminary injunction was delayed.**  Plaintiff filed his motion for a preliminary injunction late last Friday.  ECF No. 17;

4

Defendant's Opposition to Plaintiff's Ex Parte Application for Order Shortening Time to Hear Plaintiff's Motion for Preliminary Injunction (8:25-cv-01988-KK-E)

Rosenberg Decl. ¶ 5. Plaintiff's certificate of service on his original motion states that counsel were served via ECF, *see* ECF No. 17 at p. 4, but counsel for Defendants had not appeared in this action yet, since Defendants' deadline to respond to the complaint is November 24, 2025, *see* ECF Nos. 15 & 16. Plaintiff's counsel e-mailed Defendants' counsel on Monday, October 6, acknowledging that they had not served Defendants with the motion last Friday, enclosing copies of the filed papers, and asking Defendants' counsel to accept service via e-mail. Rosenberg Decl. ¶ 5. Thus, Defendants were not provided notice of Plaintiff's motion until three days after it was filed.

**This application to shorten time to hear Plaintiff's motion for a preliminary injunction.** In addition to unilaterally moving the hearing date earlier than originally noticed yesterday, Plaintiff also filed his application for an order shortening time for the Court to hear his motion for a preliminary injunction today. *See* ECF No. 27. Plaintiff asks the Court to set the hearing before the November 4, 2025 Statewide Special Election, during the week of October 27. *Id.* at 7.

**ARGUMENT**

**I.** **PLAINTIFF FAILS TO ESTABLISH GOOD CAUSE TO SHORTEN THE TIME FOR A HEARING ON HIS MOTION FOR PRELIMINARY INJUNCTION**

"Unlike regularly noticed motions, applications for ex parte relief are 'inherently unfair' and 'pose a threat to the administration of justice' because 'the parties' opportunities to prepare are grossly unbalanced.'" *Yarbrough v. San Bernardino Cnty.*, No. EDCV 24-319-KK-DTBX, 2025 WL 1415746, at *1 (C.D. Cal. Apr. 2, 2025) (quoting *Mission Power*, 883 F. Supp. at 490). Accordingly, parties seeking ex parte relief must show: (1) "the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) "the moving party is without fault in creating the crisis that requires ex parte relief," or "the crisis occurred as a result of excusable neglect." *Mission Power*, 883 F. Supp. at 492. "'Ex parte applications

5

1    are not intended to save the day for parties who have failed to present requests

2    when they should have[.]'" *Id.* (citation omitted).

3         Plaintiff asserts that he is entitled to an accelerated hearing schedule on his

4    pending motion for a preliminary injunction, and that the motion should be heard at

5    least a week earlier. *See* ECF No. 27 at 7.  Consequently, Plaintiff requests that the

6    Court substantially shorten the due date for Defendant's opposition to the motion

7    for a preliminary injunction. *See id.*

8         Plaintiff has not established—and cannot establish—good cause to shorten the

9    time for a hearing on his motion for a preliminary injunction, for he will experience

10   no prejudice from having his underlying motion heard on a regularly noticed

11   motion schedule, and his own delay and lack of diligence is the sole cause of his

12   inability to notice a hearing on the standard 28-day briefing schedule.

13        *First*, Plaintiff fails to demonstrate that he will suffer irreparable harm if the

14   Court considers his arguments on a regularly noticed motion schedule.  Plaintiff's

15   sole statement about irreparable harm is his bare assertion that "[s]hortened time is

16   needed because Mr. Hilton seeks to enjoin the election set for November 4, 2025"

17   and "[t]he primary relief sought in the motion for preliminary injunction will be

18   rendered moot if the motion is not heard prior to the election on November 4,

19   2025." *Id.* at 6 (citing Howard Decl., ECF No. 27-1).  This does not satisfy his

20   heavy burden on this ex parte application.  Moreover, Plaintiff's motion for a

21   preliminary injunction seeks alternative pre- and post-Special Election relief, which

22   demonstrates that Plaintiff himself believes any injury he supposedly will

23   experience if California voters pass Prop 50 can be remedied after the November 4,

24   2025 Statewide Special Election. *See* ECF Nos. 17 at p. 2, 17-1 at p. 21-22.

25        *Second*, "even assuming Plaintiff[] could demonstrate "irreparable prejudice,"

26   Plaintiff[] ha[s] not shown [he is] "without fault in creating the crisis that requires

27   ex parte relief, or that the crisis occurred as a result of excusable neglect." *Davis v.*

28

6

*United States Small Bus. Admin.*, No. EDCV 20-1280-SVW (KKX), 2020 WL 8483828, at *3 (C.D. Cal. Dec. 23, 2020) (quoting *Mission Power*, 883 F. Supp. at 492)).  Indeed, nothing in Plaintiff's memorandum in support of his application explains or addresses why—if he believes that more immediate relief is necessary—he did not seek injunctive relief via an emergency application, such as by a motion for a temporary restraining order, or did not file his motion for a preliminary injunction any time since August 21, 2025, when Prop 50 was cleared by the Legislature for placement on the ballot for the Special Election

The Declaration of John W. Howard filed with Plaintiff's application avers that the motion "could not have been filed sooner" because "[r]esearch for the motion for preliminary injunction was extensive and time consuming" and he hired an expert.  ECF No. 27-1.  These contentions about the normal pressures of litigation do not suffice to excuse Plaintiff from acting with sufficient time to notice a motion on a regular briefing schedule.  To be sure, motions for a preliminary injunction can take some time to craft.  But the fact remains that Plaintiff's motion was filed a full month after Plaintiff filed his lawsuit and more than six weeks after the Legislature passed, and the Governor signed, the bills placing Prop 50 on the ballot, demonstrating that the claimed urgency is simply not present.  Further, Plaintiff's motion for a preliminary injunction was filed almost two full months after he issued a press release announcing a "legal opinion" drafted by his same associated counsel regarding their views on California's redistricting efforts, and two and a half months after Plaintiff posted a "policy" document to his campaign web site declaring his intention to stop the Legislature's efforts to propose redistricting reform based on some of the same arguments he now proffers in his motion for preliminary injunction.[3]  If Plaintiff thought an early hearing on a

---

[3] *See* Press Release, *Steve Hilton Releases New Legal Opinion on Newsom/Bonta Redistricting Scheme* (Aug. 7, 2025), https://tinyurl.com/b7cubn5z; Policy, *Stop the Newsom Gerrymander: Restoring Fair Representation in California* (July 21, 2025), https://tinyurl.com/mr5xjuth.

Defendant's Opposition to Plaintiff's Ex Parte Application for Order Shortening Time to Hear Plaintiff's Motion for Preliminary Injunction (8:25-cv-01988-KK-E)

request for interim relief was necessary, he could have filed his complaint sooner and submitted an earlier request for a temporary restraining order or preliminary injunction at any time in the past six weeks.  Instead, he waited to file his motion until it would be too late for the parties to brief it in on an ordinary schedule.[4] Plaintiff's manufactured emergency does not justify fast-tracking his case.[5]

   *Third*, because the Special Election has already begun, an abbreviated briefing schedule would cause severe prejudice to Defendants and California voters everywhere.  It would put Defendants on unequal footing with Plaintiff, who took several weeks to draft and file his motion for a preliminary injunction.  Shortened time would leave Defendants with significantly less time to respond to Plaintiff's demand that this Court issue an order halting California's ongoing Special Election.

   Moreover, granting Plaintiff's request to shorten time in order to have his motion for a preliminary injunction heard before the Special Election and without a sufficient opportunity for Defendants to provide a reasoned response would jeopardize the voting rights of California voters, who have *already* begun voting in the Special Election.  *Cf. Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 919 (9th Cir. 2003) (noting that in an election challenge, "hardship

---

[4] Plaintiff's dilatory behavior stands in sharp contrast to the diligence exercised by other plaintiffs seeking to prevent voters from considering Prop 50. For example, in *Sanchez v. Weber*, Case No. S292592, a group of California state legislators petitioned the California Supreme Court on August 25, 2025, to challenge Prop 50.  Largely making the same claims pled here, the petitioners asked the court to stop Prop 50 from being placed on the ballot.  While ultimately unsuccessful in their challenge, *Sanchez v. Weber*, Case No. S292592, 2025 Cal. LEXIS 5694 (Aug. 27, 2025) (denying petition), these petitioners acted expeditiously to file their lawsuit.

[5] Indeed, Plaintiff's application for an order shortening time is akin to asking this Court to issue a temporary restraining order.  But such a request would surely have been denied, given that "[d]elays of one month or more are common grounds for denying motions for temporary restraining orders, and some courts deny emergency relief based on delays of as little as ten days." *Fivefold Props. Dunnegan LLC v. Toorak Cap. Partners LLC*, No. 8:24-CV-00958-SVW-JDE, 2024 WL 3009327, at *2 (C.D. Cal. May 7, 2024); *see also Dahl v. Swift Distribution, Inc.*, No. CV 10-00551 SJO(RZX), 2010 WL 1458957, at *4 (C.D. Cal. Apr. 1, 2010) (17 days).

falls not only upon the putative defendant, the California Secretary of State, but on all the citizens of California, because this case concerns a statewide election").  At a minimum, an order granting a preliminary injunction would "irreparably disrupt the Special Election and related processes," causing a substantial waste of state and local resources, creating confusion among voters and distrust in California's electoral system, impacting local elections and candidates running in the Special Election, and disrupting the June 2, 2026 Statewide Direct Primary Election.  Lean Decl. ¶¶ 5, 11-16.  Plaintiff's requested relief—keeping Prop 50 off the ballot, or postponing the Special Election—would also be impossible to implement now that ballots have been sent to voters and voting is underway.  *Id*. ¶ 12.

The risk that Plaintiff's lawsuit poses to every Californian's right to vote on whether to amend their own state Constitution is too great to justify a hasty determination necessitated only by Plaintiff's own failure "'to present [his] request[] when [he] should have.'"  *Mission Power*, 883 F. Supp. at 492 (citation omitted).  Caution is particularly important in the context of an ongoing election, given that "interference with an election after voting has begun is unprecedented." *Southwest Voter Registration Educ. Project*, 344 F.3d at 919.

Accordingly, Plaintiff has failed to establish good cause for the Court to grant his demand for an accelerated hearing schedule, and his motion should be denied.

## II. THE COURT SHOULD SET A HEARING DATE AFTER THE ORIGINALLY NOTICED NOVEMBER 7 HEARING DATE

Defendants respectfully request that if the Court denies Plaintiff's application to shorten time for a hearing on his motion for a preliminary injunction, it also issue an order clarifying the applicable hearing date for that motion.  As noted above, Plaintiff originally improperly noticed his motion for a Friday hearing, ECF No. 17 at p. 1, despite this Court's standing order directing that civil motion hearings are to be set on Thursdays, ECF No. 5 at p. 5.  Under the Local Rules of the Central District of California, Defendant's opposition to the preliminary injunction motion

9

would have been due 21 days before that date, on Friday, October 17, 2025. *See* L.R. 7-9. However, on October 7, 2025, Plaintiff filed an amended notice setting the hearing date for a day *earlier* than originally noticed, providing Defendants less time to respond. ECF No. 20. The court clerk then issued a notice of deficiency regarding the original November 7, 2025 hearing date, ECF No. 21, rendering unclear the hearing date on Plaintiff's motion and Defendants' corresponding deadline to respond. Because Plaintiff originally sought a hearing date of Friday, "November 7, 2025 at 9:30 a.m., or as soon thereafter as the matter may be heard," ECF No. 17 at p. 1, Defendants respectfully request that the Court issue an order vacating the re-noticed November 6, 2025 hearing date and setting the hearing on a date after November 7, 2025, with briefing deadlines to correspond to that hearing date in keeping with the Local Rules (such as November 13, 2025 or any available hearing date thereafter). Defendants have had to spend significant time addressing Plaintiff's unwarranted application for an order shortening time—time they otherwise would have devoted to preparing their opposition to the motion for preliminary injunction. Setting the hearing for an appropriate date *after* November 7 would help rectify that unnecessary expenditure of Defendants' time by providing Defendants with a few additional days to respond to Plaintiff's motion for interim relief. This is especially important in light of the stakes in this matter, in which Plaintiff seeks to single-handedly halt an ongoing special election.

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiff's ex parte application for an order shortening time for the hearing on his motion for preliminary injunction, vacate the re-noticed November 6 hearing date, and set Plaintiff's motion for hearing on November 13, 2025 or any hearing date thereafter, with standard briefing deadlines that correspond to the new hearing date.

10

Defendant's Opposition to Plaintiff's Ex Parte Application for Order Shortening Time to Hear Plaintiff's Motion for Preliminary Injunction (8:25-cv-01988-KK-E)

1     Dated: October 8, 2025                Respectfully submitted,

2                                         ROB BONTA
                                        Attorney General of California

3                                         ANYA M. BINSACCA
                                        Supervising Deputy Attorney General

4                                         IRAM HASAN
                                        DAVID GREEN

5                                         Deputy Attorneys General

6

7                                         */s/ Jennifer E. Rosenberg*
                                        JENNIFER E. ROSENBERG

8                                         Deputy Attorney General
                                        *Attorneys for Defendants California Secretary of State Shirley Weber and Governor Gavin Newsom*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF COMPLIANCE**

2

    The undersigned, counsel of record for Defendants California Secretary of

3

State Shirley Weber and Governor Gavin Newsom, certifies that this brief contains

4

3,477 words, which complies with the word limit of L.R. 11-6.1.

5

6

Dated:  October 8, 2025             Respectfully submitted,

7

ROB BONTA
Attorney General of California

8

9

*/s/ Jennifer E. Rosenberg*

10

JENNIFER E. ROSENBERG
Deputy Attorney General

11

*Attorneys for Defendants California Secretary of State Shirley Weber and Governor Gavin Newsom*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

12