1   ROBIN B. JOHANSEN, State Bar No. 79084
    rjohansen@olsonremcho.com
2   THOMAS A. WILLIS, State Bar No. 160989
    twillis@olsonremcho.com
3   INEZ KAMINSKI, State Bar No. 345584
    ikaminski@olsonremcho.com
4   OLSON REMCHO, LLP
    555 Capitol Mall, Suite 400
5   Sacramento, CA 95814
    Phone: (916) 442-2952
6   Fax: (916) 442-1280

7   CARA L. JENKINS, State Bar No. 271432
    Legislative Counsel
8   cara.jenkins@legislativecounsel.ca.gov
    BRIAN A. BOBB, State Bar No. 250594
9   Principal Deputy Legislative Counsel
    brian.bobb@legislativecounsel.ca.gov
10  OFFICE OF LEGISLATIVE COUNSEL
    925 L Street, Suite 900
11  Sacramento, CA 95814
    Phone: (916) 341-8000

12
    Attorneys for Real Party in Interest
13  Legislature of the State of California

14

15                  UNITED STATES DISTRICT COURT

16                 CENTRAL DISTRICT OF CALIFORNIA

17                        EASTERN DIVISION

18  STEVE HILTON,                          No.:  8:25-cv-01988-KK-E

19            Plaintiff,                    **REAL PARTY IN INTEREST
                                            LEGISLATURE OF THE STATE OF
20  vs.                                     CALIFORNIA'S SUPPLEMENTAL
                                            BRIEF REGARDING ARTICLE III
21  SHIRLEY WEBER, in her official capacity JURISDICTION**
    as California Secretary of State,
22  GOV. GAVIN NEWSOM in his official       Hearing:
    capacity,
23                                          Date:   November 6, 2025
            Defendants,                     Time:   9:30 a.m.
24                                          Judge:  The Honorable Kenly Kiya Kato
                                            Dept.:  Courtroom 3, 3rd Floor
25  And the LEGISLATURE OF
    CALIFORNIA,
26
            Real Parties In Interest.
27

28

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ 2

INTRODUCTION ....................................................................................................... 4

    I.      PLAINTIFF LACKS STANDING TO BRING HIS COMPLAINT ............ 5

    II.    PLAINTIFF'S CLAIMS ARE NOT RIPE ....................................................... 9

    III.   PLAINTIFF'S COMPLAINT DOES NOT RAISE A SUBSTANTIAL FEDERAL QUESTION ........................................................................................ 9

CONCLUSION............................................................................................................ 12

CERTIFICATE OF COMPLIANCE........................................................................... 13

1

# TABLE OF AUTHORITIES

## CASES

*Abrams v. Johnson*,
  521 U.S. 74 (1997)...................................................................................................8

*Dep't of Com. v. U.S. House of Representatives*,
  525 U.S. 316 (1999)................................................................................................8

*Georgia* v. *Ashcroft*,
  539 U.S. 461 (2003)..............................................................................................11

*Gill v. Whitford*,
  585 U.S. 48 (2018)...............................................................................................5, 7

*Goosby v. Osser*,
  409 U.S. 512 (1973).........................................................................................4, 5, 10

*Hagans v. Lavine*,
  415 U.S. 528 (1974)...............................................................................................10

*Johnson v. Miller*,
  922 F.Supp. 1556 (S.D. Ga. 1995) .........................................................................8

*Kalson v. Paterson*,
  542 F.3d 281 (2nd Cir. 2008) ................................................................................10

*Karcher v. Daggett*,
  462 U.S. 725 (1983)............................................................................................7, 8

*Kirkpatrick v. Preisler*,
  394 U.S. 526 (1969)................................................................................................7

*Lance v. Coffman*,
  549 U.S. 437 (2007)................................................................................................9

*League of United Latin Am. Citizens v. Perry*,
  548 U.S. 399 (2006)..............................................................................................11

*Legislature v. Deukmejian*,
  34 Cal.3d 658 (1983)............................................................................................11

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)................................................................................................5

*Project Veritas v. Schmidt*,
  125 F.4th 929 (9th Cir. 2025) ................................................................................9

*Reynolds v. Sims*,
  377 U.S. 533 (1964)..........................................................................................6, 11

*Rucho v. Common Cause*,
  588 U.S. 684 (2019)..............................................................................................11

**CASES (cont'd)**

*Shapiro v. McManus*,
  577 U.S. 39 (2015)................................................................................4, 9, 10

*Skolnick v. Bd. of Comm'rs*,
  435 F.2d 361 (7th Cir. 1970) .............................................................7

*Spokeo, Inc. v. Robins*,
  578 U. S. 330 (2016).............................................................................5

*Wolfson v. Brammer*,
  616 F.3d 1045 (9th Cir. 2010) ............................................................9

*Wright v. Dougherty County*,
  358 F.3d 1352 (11th Cir. 2004) ..........................................................7

**STATUTES**

Elections Code

  § 3011.....................................................................................................9

  § 3017.....................................................................................................9

  § 3020.....................................................................................................9

  § 15301...................................................................................................9

  § 15372...................................................................................................9

  § 15501...................................................................................................9

**OTHER AUTHORITIES**

13 U.S.C. § 141 ........................................................................................8

Stats. 2025, ch. 97 (Cal. 2025).................................................................9

**INTRODUCTION**

Plaintiff Steve Hilton has asked the Court to convene a three-judge panel to rule on his challenge to Proposition 50 on the November 4, 2025, California ballot. As this Court stated, "a three-judge panel 'is not required where the district court itself lacks jurisdiction of the complaint or the complaint is not justiciable in the federal courts'" because the claims "do not raise a substantial federal question." Dkt. 37 (quoting *Shapiro v. McManus*, 577 U.S. 39, 44-45 (2015)). Accordingly, the Court has ordered the parties to file supplemental briefing to address the following questions: (1) whether Plaintiff has standing, (2) whether Plaintiff's claims are ripe for adjudication, and (3) whether Plaintiff's claims raise a federal question for jurisdictional purposes under *Goosby v. Osser*, 409 U.S. 512 (1973).

The answer to all three questions is no. Although Plaintiff has asked the Court to remove Proposition 50 from the ballot, he waited far too long to ask for that kind of relief. As a result, the election will already have occurred by the time Plaintiff's preliminary injunction motion is heard, and Plaintiff's claim will not be ripe unless and until it is clear that Proposition 50 has passed.

If Proposition 50 passes, Plaintiff lacks standing because he cannot show that it will cause him to suffer any injury in fact that is redressable by this Court. Plaintiff claims that the congressional districts that would be adopted by Proposition 50 are not equally populated due to demographic shifts that have occurred since the 2020 census on which those districts are based. In order to have standing to make such a claim, Plaintiff must be able to show that under Proposition 50, his congressional district would be over-populated and other districts would be under-populated. This he cannot do, because the proposed districts are equal under the only legally permissible measure that can be used: the 2020 census data. For that same reason, Plaintiff cannot prove that any supposed injury to him is redressable by this Court. Even if the Court were to order that Proposition 50 is somehow invalid and the existing districts must

4

1    remain in place, Plaintiff's alleged injury would remain, because the population in his

2    district remains the same under either plan.

3          Finally, Plaintiff has no right to a three-judge panel because his complaint

4    fails to raise a federal question for jurisdictional purposes under *Goosby v. Osser*.

5    Plaintiff's complaint contains only two causes of action. He cannot rely on his first

6    claim regarding unequal districts because he lacks standing to raise it and it is wholly

7    insubstantial. Plaintiff's second cause of action is based entirely on a California

8    Supreme Court case holding that the California Constitution prohibits mid-decade

9    redistricting. Dkt. 1, Compl. at 6-8. Even if Plaintiff could somehow transform that

10    claim into a federal question, it is patently frivolous on its face, because Proposition 50

11    expressly states that it applies "notwithstanding any other provision of this Constitution

12    or existing law[.]" Dkt. 38-2, RJN, Ex. A at 18.

13    **I.**      <u>**PLAINTIFF LACKS STANDING TO BRING HIS COMPLAINT**</u>

14          The doctrine of standing "is an essential and unchanging part of the case-

15    or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560

16    (1992). In order to have standing to bring this lawsuit, Plaintiff must show that he

17    "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the

18    defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Gill v.*

19    *Whitford*, 585 U.S. 48, 65 (2018) (quoting *Spokeo, Inc. v. Robins*, 578 U. S. 330, 338

20    (2016)). The Supreme Court has said that "[f]oremost among these requirements is

21    injury in fact – a plaintiff's pleading and proof that he has suffered the 'invasion of a

22    legally protected interest' that is 'concrete and particularized[.]'" *Id.* (quoting *Lujan*,

23    504 U.S. at 560).

24          Plaintiff cannot show that he has suffered or will suffer any injury in fact.

25    As of this writing, no one knows whether Proposition 50 will pass. If it does not, then

26    Plaintiff's case is moot. If Proposition 50 passes, Plaintiff still has not alleged any

27    cognizable injury. Plaintiff's opening brief in support of his motion for preliminary

28

1  injunction alleges that he resides in proposed new Congressional District 15 ("CD 15").[1]

2  He says in his most recent filing that he currently lives in CD 16, but that Proposition 50

3  would move him into CD 15.  Dkt. 41, Pl. Supp'l Br. at 2.  That is unlikely to be the

4  case, because the boundaries of proposed CD 15 are the same as the boundaries of the

5  present District 15 that were drawn by the California Citizens Redistricting

6  Commission.  Dkt. 38-1, Connelly Decl. ¶ 4.  Even if Plaintiff is correct, the populations

7  of CD 15 and CD 16 are within one person of each other.  Dkt. 38-2, RJN Ex. B at 40.

8         Plaintiff also complains that he will be forced to move from a known

9  member to an unknown member of Congress and that Proposition 50 limits his

10  opportunities to run for office in his familiar neighborhoods.  Dkt. 41 at 3.  But Plaintiff

11  cannot assume that his "known" member of Congress would be reelected, and he has

12  said he is running for Governor, which is a statewide office not affected in any way by

13  Proposition 50.

14         Finally if such injuries were to occur, they would not state a federal claim

15  because they are the inevitable effects of any mid-decade redistricting, which is

16  perfectly acceptable under federal law.  The Supreme Court has expressly said that "we

17  do not mean to intimate that more frequent reapportionment [than once a decade] would

18  not be constitutionally permissible or practicably desirable."  *Reynolds v. Sims*, 377 U.S.

19  533, 583-84 (1964).

20         Plaintiff's principal claim is that "the Proposition 50 maps reflect unequal

21  congressional districts" because they are based on outdated census data and therefore

22  they "deny Plaintiff, and everyone else in the state, the right to an equal vote in

23  congressional elections."[2]  For that argument he offered nothing more than that it is

24  "common sense" that population shifts have occurred since the 2020 census and because

25

26

27  [1] Dkt. 17-1, Pl.'s Mem. P. & A. in Supp. of Pl.'s Mot. for Prelim. Inj. ("Pl. MPA") at 6.
28  [2] Dkt. 17-1, Pl. MPA at 13.

1  the Proposition 50 districts were drawn using the 2020 census data, they are by

2  definition unequal.  Dkt. 17-1, Pl. MPA at 13.  That argument requires much more.

3         First, Plaintiff must show that his own vote is diluted because he lives in a

4  congressional district that is over-populated compared to other districts.  *See Gill*,

5  585 U.S. at 69.  Put another way, Plaintiff must be able to show that he is under-

6  represented in Congress because he must compete with more voters to elect the candidate

7  of his choice or with more constituents to get his elected representative's attention than

8  do voters in under-populated districts.  *Wright v. Dougherty County*, 358 F.3d 1352, 1355

9  (11th Cir. 2004); *Skolnick v. Bd. of Comm'rs*, 435 F.2d 361, 363-64 (7th Cir. 1970).

10  Plaintiff cannot rely on his claim that "everyone else in the state" suffers the same injury.

11  Dkt. 17-1, Pl. MPA at 13.  As the Eleventh Circuit said in *Wright v. Dougherty County*,

12  "over-represented voting district members are barred from bringing suit on behalf of

13  persons who reside in under-represented voting districts."  358 F.3d at 1355.

14         Second, Plaintiff must show that his under-representation will be greater

15  under Proposition 50 than it is under the existing districts as a result of population shifts.

16  If he cannot, he has not suffered any injury in fact.

17         Plaintiff cannot make either of these showings without using the 2020 census

18  data, because there is no other legally permissible way to measure population with the

19  exactitude required by the Supreme Court.  In *Karcher v. Daggett*, 462 U.S. 725 (1983),

20  the Court held that "because the census count represents the 'best population data

21  available,' *it is the only basis for good-faith attempts to achieve population equality*."  *Id.*

22  at 738 (emphasis added) (citation omitted) (quoting *Kirkpatrick v. Preisler*, 394 U.S. 526,

23  528 (1969)).

24         The *Karcher* Court's statement about census data remains true today.  As

25  the Legislature explained in its opposition to Plaintiff's motion for a preliminary

26  injunction, Dkt. 38, other measures of population such as the American Community

27  Survey provide only estimates based on sampling and do not provide population data at

28  the census block level, which is necessary in order to achieve the kind of parity required

1    under *Karcher*.[3]  Moreover, the Supreme Court has construed the federal Census Act as

2    prohibiting the use of statistical sampling in calculating population for the purpose of

3    apportionment of congressional seats.  *Dep't of Com. v. U.S. House of Representatives*,

4    525 U.S. 316, 343 (1999).  Finally, although federal law provides for the Census Bureau

5    to conduct a mid-decade form of census (13 U.S.C. § 141(d)), it expressly provides that

6    "[i]nformation obtained in any mid-decade census shall not be used for apportionment

7    of Representatives in Congress among the several States, nor shall such information be

8    used in prescribing congressional districts."  *Id.* § 141(e)(2).  For all those reasons, the

9    courts have concluded that "[i]n the calculus of district population deviation, our only

10   measure of the state's demographics is the decennial census," even if "[t]he real data,

11   known only to providence, would . . . lead us to another result."  *Johnson v. Miller*,

12   922 F.Supp. 1556, 1563 (S.D. Ga. 1995) (three-judge court), *aff'd sub nom Abrams v.*

13   *Johnson*, 521 U.S. 74 (1997).

14            It cannot be disputed that using 2020 census data, the Proposition 50

15   districts are as equal in population as those presently in place.  *See* Dkt. 38-1, Connelly

16   Decl. ¶ 4.  Thus, Plaintiff cannot show that his vote would be more diluted by

17   population shifts under Proposition 50 than it is under the current districts and he cannot

18   demonstrate that he has suffered or will suffer an injury that is redressable by this Court.

19            Instead, Plaintiff's complaint amounts only to a generalized grievance that

20   *some* vote dilution must have occurred since 2021, and therefore there must be an equal

21   protection violation.  The same is true of his second cause of action based on the

22   California Supreme Court's holding that the California Constitution bars mid-decade

23   redistricting.  Even if Proposition 50's "notwithstanding" clause did not resolve that

24   claim, the United States Supreme Court has made clear that Plaintiff "may not rely on

25   'the kind of undifferentiated, generalized grievance about the conduct of government

26

27   ─────────────────────

28   [3] For a description of the American Community Survey, see the Census Bureau's
     website at https://www.census.gov/programs-surveys/acs.html.

1    that we have refused to countenance in the past.'" *Gill,* 585 U.S. at 68 (quoting *Lance v.*

2    *Coffman*, 549 U.S. 437, 442 (2007))*.*

3    **II.    PLAINTIFF'S CLAIMS ARE NOT RIPE**

4              Neither of Plaintiff's claims is ripe, because they are predicated on a

5    speculated outcome of the November 4, 2025, Special Election.  As the Ninth Circuit

6    has said, ripeness has a constitutional component because it overlaps with the standing

7    analysis, inquiring whether "the issues presented are 'definite and concrete, not

8    hypothetical or abstract.'" *Project Veritas v. Schmidt*, 125 F.4th 929, 941 (9th Cir. 2025)

9    (quoting *Wolfson v. Brammer*, 616 F.3d 1045, 1058 (9th Cir. 2010)).

10             Plaintiff cannot establish Article III ripeness, just as he cannot assert any

11   injury in fact, unless and until Proposition 50 is approved by the voters.  It may take

12   considerable time before anyone knows that.  The official canvass period lasts 30 days,

13   permitting counties time to count every validly-cast ballot (Cal. Elec. Code §§ 15301,

14   15372; Stats. 2025, ch. 97, § 3(f)(1) (Cal. 2025) (SB 280)), and the Secretary of State

15   has until 38 days after the election (December 12) to certify the election results.  Cal.

16   Elec. Code § 15501.  Counties continue to receive valid ballots after Election Day –

17   including vote-by-mail ballots received by November 12, 2025, provisional ballots cast

18   by newly-registered voters, and cured ballots that have been verified by the voters who

19   cast them.  *See id.* §§ 3011, 3017, 3020(b), (c).  Accordingly, Plaintiff will not be able

20   to establish whether any issues are ripe for judicial consideration for several weeks,

21   until after the results of the election are known.  He certainly cannot do so now.

22   **III.   PLAINTIFF'S COMPLAINT DOES NOT RAISE A SUBSTANTIAL**
        **FEDERAL QUESTION**
23

24             The Supreme Court has explained that "[a] three-judge court is not required

25   where the district court itself lacks jurisdiction of the complaint or the complaint is not

26   justiciable in the federal courts." *Shapiro v. McManus*, 577 U.S. 39, 44-45 (2015).

27   Thus, although constitutional claims will not lightly be found insubstantial, "wholly

28

                                        9

1    insubstantial and frivolous claims" are not justiciable in federal courts and should not be

2    assigned to a three-judge court.  *Id.* at 45.

3            The case at issue here is very similar to *Kalson v. Paterson*, 542 F.3d 281

4    (2nd Cir. 2008).  There, the Second Circuit held that a three-judge panel was not

5    required to resolve a challenge to New York's 2001 congressional plan.  Although

6    *Kalson* predates *Shapiro*, the court's reasoning is entirely consistent with and fully

7    tracks the Supreme Court's reasoning in *Shapiro*.  In *Kalson*, as here, plaintiff

8    challenged a congressional plan based on an entirely unsupported claim that

9    congressional districts must be drawn based on voting-age population and that

10   differences in voting-age population among congressional districts rendered the New

11   York congressional plan unconstitutional.  *Id.* at 285.

12           As in *Shapiro*, the *Kalson* court stated that "[an] insubstantial federal claim

13   is not a claim validly brought under *federal law*," and therefore "a single judge is

14   permitted to dismiss such a claim with prejudice."  *Id.* at 287 (emphasis in original).

15   The court then articulated the relevant standards, namely whether the claim is

16   "obviously frivolous" or "wholly insubstantial." *Id.* at 287-88 (citing *Goosby v. Osser*,

17   409 U.S. at 518, and *Hagans v. Lavine*, 415 U.S. 528, 536-38 (1974)).  Applying those

18   standards, the court found plaintiff's claim insubstantial because plaintiff had presented

19   nothing "that supports the thesis that Article I requires districts equal in voting-age

20   population." *Id.* at 290.

21           As demonstrated above and in the oppositions[4] to Plaintiff's motion for

22   preliminary injunction, Plaintiff's population disparity argument is equally frivolous.

23   First, there is no basis for Plaintiff's argument that a mid-decade redistricting plan,

24   whether required by a court or pursued voluntarily by a legislative body, must be based

25   on more recent data than the last decennial census.  As the Supreme Court has

26   frequently acknowledged, both legislatures and courts operate under the "legal fiction"

27

28   [4] Dkts. 38, 39.

that their plans are constitutionally apportioned throughout the decade, whether they are a court ordering that a new plan must be drawn or a legislature engaged in mid-decade redistricting. *See Georgia v. Ashcroft*, 539 U.S. 461, 488 n. 2 (2003) (superseded by statute on other grounds); *Reynolds*, 377 U.S. at 583-84; *see also League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 421 (2006).

Second, even if Plaintiff's claim had any legal plausibility, it would be impossible to implement. As demonstrated above, there is simply no other dataset on which a mid-decade redistricting plan could be based, and Plaintiff has not suggested and cannot suggest any alternative.

Plaintiff's second claim is, if possible, even more frivolous. Plaintiff appears to be arguing that Proposition 50 – a measure that would expressly amend the California Constitution to allow for a new congressional plan to go into effect – would violate a provision of the State Constitution that has been interpreted by the California Supreme Court to prohibit mid-decade redistricting,[5] and that alleged violation of state law rises to a violation of the federal Equal Protection Clause because the new plan would constitute a "political gerrymander". *See* Dkt. 1, Compl. ¶¶ 16-22. Taking the second part of that argument first, the Supreme Court has held that partisan gerrymandering claims are nonjusticiable. *Rucho v. Common Cause*, 588 U.S. 684, 718 (2019). That alone makes the claim wholly insubstantial and nonjusticiable in federal court. And without the equal protection claim wrapper, the argument that Proposition 50 has or would violate the State Constitution is nothing more than a state law claim. Even that claim is frivolous, because Proposition 50 provides that it applies "notwithstanding" the section that the court interpreted to prohibit mid-decade redistricting.

---

[5] *See Legislature v. Deukmejian*, 34 Cal.3d 658 (1983).

# **CONCLUSION**

Plaintiff's request for a three-judge panel should be denied, and Defendants and Real Party in Interest should be permitted, on or before their responsive pleadings are due, to file motions to dismiss consistent with the court's denial of the Plaintiff's request.

Dated:  October 24, 2025                    Respectfully submitted,

                                                                OLSON REMCHO, LLP


                                                                By:  /s/ Robin B. Johansen
                                                                        Robin B. Johansen

                                                                        Attorneys for Real Party in Interest
                                                                        Legislature of the State of California

12

1

## **CERTIFICATE OF COMPLIANCE**

2       The undersigned, counsel of record for Real Party in Interest Legislature of

3 the State of California, certifies that this brief contains 2,723 words, which complies

4 with the word limit of L.R. 11-6.1, and is under twelve (12) pages pursuant to

5 Honorable Judge Kenly Kiya Kato's Order dated October 20, 2025.

6

7 Dated:  October 24, 2025          By:   /s/ Robin B. Johansen

8                                                        Robin B. Johansen

9

(2,128,627)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13