UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **SACV 25-01988-KK-Ex** | Date: | November 4, 2025 |
|---|---|---|---|

| Title: | ***Steve Hilton et al. v. Shirley Weber et al.*** |
|---|---|

Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Twyla Freeman | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **(In Chambers) Order (1) DENYING Plaintiff's Motion for Preliminary Injunction [Dkt. 17], (2) DENYING Plaintiff's Request for the Appointment of a Three Judge Panel [Dkt. 36], and (3) DISMISSING Plaintiff's Complaint With Leave to Amend**

**I.
INTRODUCTION**

On September 4, 2025, plaintiff Steve Hilton ("Plaintiff") filed a Complaint against defendant California Secretary of State Shirley Weber ("Secretary of State Weber"), defendant Governor Gavin Newsom ("Governor Newsom"), and real party in interest the Legislature of California ("California Legislature") (collectively, "Defendants").  ECF Docket No. ("Dkt.") 1, Complaint ("Compl.").  On October 3, 2025, Plaintiff filed the instant Motion for Preliminary Injunction ("Motion").  Dkt. 17-1, Motion ("Mot.").  On October 17, 2025, Plaintiff filed the instant Request for the Appointment of a Three-Judge Panel ("Request").  Dkt. 36, Request ("Req.").

The Court finds this matter appropriate for resolution without oral argument.  See Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.  For the reasons set forth below, Plaintiff's Motion and Request are **DENIED**, and Plaintiff's Complaint is **DISMISSED** with leave to amend.

**II.
BACKGROUND**

On August 21, 2025, the California Legislature approved Assembly Constitution Amendment No. 8 ("ACA 8").  ACA 8, 2025-2026 Leg., Reg. Sess. (Cal. 2025).  ACA 8 proposes amending the California Constitution to temporarily replace the current congressional district maps in California for

the 2026, 2028, and 2030 congressional elections.  See id.  The same day, Governor Newsom signed into law Assembly Bill No. 604 ("AB 604") and Senate Bill No. 280 ("SB 280").  See Assem. Bill No. 604, 2025-2026 Reg. Sess. (Cal. Aug. 21, 2025); Sen. Bill No. 280, 2025-2026 Reg. Sess. (Cal. Aug. 21, 2025).  AB 604 sets forth the temporary district maps that would be implemented for congressional elections in California until 2030 if ACA 8 is adopted.  See Assem. Bill No. 604.  SB 280 sets a special election for November 4, 2025, in which California voters will decide whether to adopt ACA 8, designated as Proposition 50 ("Prop 50").  See Sen. Bill No. 280.

On September 4, 2025, Plaintiff, a registered voter in San Mateo County, California, and candidate for the 2026 California gubernatorial election, filed the operative Complaint challenging the constitutionality of Prop 50.[1]  Compl. ¶ 1.  In the Complaint, Plaintiff alleges Defendants, in undertaking a "hyper-partisan gerrymandering project[,] . . . act[ed] 'under color of state law' to deprive Plaintiff of rights, privileges, or immunities secured by the U.S. Constitution."  Id. ¶ 14.  The Complaint raises the following two causes of action:

1.  **Cause of Action One:**  Violation of the Equal Protection Clause Based on Unequal Congressional Districts; and
2.  **Cause of Action Two:**  Violation of the Equal Protection Clause Based on Legislature v. Deukmejian, 34 Cal. 3d 658 (1983).

Id. ¶¶ 11-22.

On October 3, 2025, Plaintiff filed the Motion.  Mot.  Plaintiff moves for preliminary injunction, alleging Prop 50 would create congressional districts with unequal populations in violation of the Equal Protection Clause's "one person, one vote" principle by failing to account for population changes since the last decennial census.  Id. at 19-23.  Plaintiff seeks a preliminary injunction either (1) enjoining Secretary of State Weber "to suspend all activity in processing this election and postpone this election until she can produce clear and convincing evidence that these maps are relatively equal in population or if unequal, that the discrepancy serves a legitimate governmental purpose," or, (2) if Prop 50 passes, enjoining "implementation of the new maps until the state can produce clear and convincing evidence that these maps are relatively equal in population or if unequal, that the discrepancy serves a legitimate governmental purpose."  Id. at 28.  Plaintiff also requests a three-judge panel under 28 U.S.C. § 2284 ("Section 2284").  Id. at 8.  In support of the Motion, Plaintiff submits the Declaration of Chandra Sharma.  Dkt. 17-2 ("Sharma Decl.").

On October 17, 2025, Plaintiff filed the Request, reasserting his request that the Court initiate the process for convening a three-judge panel pursuant to Section 2284.  Req. at 2-3.

On October 20, 2025, the Court ordered the parties to file supplemental briefing addressing (1) whether Plaintiff has standing, (2) whether the claims are ripe for adjudication, and (3) whether Plaintiff's claims raise a federal question for jurisdictional purposes under Goosby v. Osser, 409 U.S. 512 (1973).  Dkt. 37.  On the same day, real party in interest the California Legislature filed an Opposition to the Motion, dkt. 38, and defendants Secretary of State Weber and Governor Newsom filed an Opposition to the Motion, dkt. 39.  In support of its Opposition, the California Legislature

---

[1] The Court notes Plaintiff chose to file his suit in the Central District of California rather than his home forum of the Northern District of California.

**CIVIL MINUTES—GENERAL**    Initials of Deputy Clerk TF

includes the Declaration of John W. Connelly, dkt. 38-1 ("Connelly Decl."), and a Supplemental Request for Judicial Notice, dkt. 38-2 ("Supp. RJN").[2]  In support of their Opposition, defendants Secretary of State Weber and Governor Newsom submit the Declaration of Jana Lean, dkt. 39-1.

On October 24, 2025, the parties filed their respective supplemental briefings addressing the Court's October 20, 2025 Order.  Dkt. 41, Plaintiff's Supplemental Briefing ("Pl.'s Supp. Br."); Dkt. 42, Defendants Secretary of State Weber and Governor Newsom's Supplemental Brief; Dkt. 43, Real Party in Interest Legislature of the State of California's Supplemental Brief ("Legis.'s Supp. Br.").

On October 27, 2025, Plaintiff filed a Reply.  Dkt. 44, Reply.

This matter, thus, stands submitted.

### III.
### LEGAL STANDARD

Federal courts are courts of "limited jurisdiction" which "possess only that power authorized by Constitution and statute."  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  Under Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

Article III of the U.S. Constitution limits federal courts' subject matter jurisdiction to "actual cases or controversies."  Clapper v. Amnesty Int'l USA, 568 U.S. 398, 408 (2013) (citation modified) (quoting DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006)).  One facet of this "case-or-controversy requirement" is that a plaintiff "must establish that they have standing to sue."  Id. (citation modified) (quoting Raines v. Byrd, 521 U.S. 811, 818 (1997)).  "The plaintiff 'bears the burden of establishing standing as of the time [s]he brought th[e] lawsuit and maintaining it thereafter.'"  Murthy v. Missouri, 603 U.S. 43, 58 (2024) (quoting Carney v. Adams, 592 U.S. 53, 59 (2020)).

Each element of standing "must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation."  Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992).  At the preliminary injunction stage, "the plaintiff must make a 'clear showing' that she is 'likely' to establish each element of standing."  Murthy, 603 U.S. at 58 (citing Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008)).  Furthermore, the plaintiff must "demonstrate standing for each claim that they press and for each form of relief that they seek."  Am. Encore v. Fontes, 152 F.4th

---

[2] A court may take judicial notice of documents extrinsic to the complaint if no party contests their authenticity and the complaint "necessarily relies" upon the documents, Parrino v. FHP, Inc., 146 F.3d 699, 705-06 (9th Cir. 1998), superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 681 (9th Cir. 2006), or if the documents are matters of public record, Lee v. City of Los Angeles, 250 F.3d 668, 688-89 (9th Cir. 2001).  Here, the California Legislature requests the Court take judicial notice of the Official Voter Information Guide for the November 4, 2025 California Statewide Special Election, see Supp. RJN, Ex. A, and the AB 604 Districts Atlas, see Supp. RJN, Ex. B.  Because Plaintiff does not dispute the authenticity of the documents and the documents are either necessarily relied upon by the Complaint or are matters of public record, the Supplemental Request for Judicial Notice is **GRANTED**.

1097, 1110 (9th Cir. 2025) (citation modified) (quoting <u>TransUnion LLC v. Ramirez</u>, 594 U.S. 413, 431 (2021)).

**IV.**
**<u>DISCUSSION</u>**

**A.   THIS COURT DOES NOT HAVE JURISDICTION OVER PLAINTIFF'S CLAIMS BECAUSE PLAINTIFF HAS NOT ESTABLISHED ARTICLE III STANDING**

      **1.   Applicable Law**

The "irreducible constitutional minimum" of Article III standing consists of: (1) injury in fact, (2) causation, and (3) redressability.  <u>Spokeo, Inc. v. Robins</u>, 578 U.S. 330, 338 (2016) (quoting <u>Lujan</u>, 504 U.S. at 560).  An injury in fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  <u>Lujan</u>, 504 U.S. at 560 (citation modified).

First, "[t]o be 'concrete,' the injury 'must actually exist' – an abstract, theoretical concern will not do."  <u>Pierce v. Ducey</u>, 965 F.3d 1085, 1089 (9th Cir. 2020) (quoting <u>Spokeo, Inc.</u>, 578 U.S. at 340).  Second, "[f]or an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'"  <u>Spokeo, Inc.</u>, 578 U.S. at 339 (quoting <u>Lujan</u>, 504 U.S. at 560 n.1).  "[A] suit alleging only generalized grievances fails for lack of standing."  <u>Sisley v. U.S. Drug Enf't Admin.</u>, 11 F.4th 1029, 1034 (9th Cir. 2021) (citation modified).  A generalized grievance is "characterized by its abstract and indefinite nature – for example, harm to the common concern for obedience to law."  <u>Ecological Rts. Found. v. Pac. Gas & Elec. Co.</u>, 874 F.3d 1083, 1093 (9th Cir. 2017) (citation modified).  Third, an injury is imminent "if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur."  <u>In re Zappos.com, Inc.</u>, 888 F.3d 1020, 1024 (9th Cir. 2018) (citation modified).  Allegations of merely "<u>possible</u> future injury" are insufficient.  <u>Clapper</u>, 568 U.S. at 409 (citation modified) (quoting <u>Whitmore v. Arkansas</u>, 495 U.S. 149, 158 (1990)).

      **2.   Analysis**

As an initial matter, it appears none of Plaintiff's claimed injuries are imminent because it is speculative whether California voters will, in fact, approve Prop 50.  While Plaintiff maintains "there is a better than even chance" Prop 50 will pass, Plaintiff offers no evidence to support this conclusory assertion.  Pl.'s Supp. Br. at 7.[3]  Furthermore, Plaintiff's lack of imminent injury is underscored by the conditional nature of his requested relief – an injunction preventing the implementation of the new congressional district maps "<u>if</u> the measure is passed," Mot. at 28 (emphasis added) – and his statement that he will dismiss his claims "[<u>i</u>]<u>f</u> the voters reject Prop[] 50 at the polls," Pl.'s Supp. Br. at 13 (emphasis added).  Hence, Plaintiff's allegations of injury are

---

[3] In his Supplemental Briefing, Plaintiff urges the Court to "acknowledge" an October 2025 poll which purportedly demonstrates a majority of likely voters support Prop 50.  Pl.'s Supp. Br. at 13.  This does not show Prop 50's passage is imminent, and, in any event, the Court declines to speculate on the outcome of the November 4, 2025 special election.  The Court further notes the official results of the election might not be known until 38 days after the election, the statutory deadline for the Secretary of State to certify the results under state law.  <u>See</u> Cal. Elec. Code § 15501(b).

"necessarily conjectural." <u>Clapper</u>, 568 U.S. at 412; <u>see also, e.g.</u>, <u>Serv. Emps. Int'l Union, Local 721 v. Cnty. of Riverside</u>, No. EDCV-09–00561–VAP-JTLx, 2011 WL 1599610, at *13 (C.D. Cal. Apr. 27, 2011) (finding a plaintiff failed to allege a concrete and particularized injury where the injury rested on "contingent future events" (quoting <u>Bova v. City of Medford</u>, 564 F.3d 1093, 1096 (9th Cir. 2009))).

Moreover, even if Plaintiff demonstrated imminence, none of his asserted injuries are sufficient to confer Article III standing. Here, Plaintiff asserts two categories of injuries. According to Plaintiff's primary theory of injury, the "unequal congressional districts" created by Prop 50 will "deny Plaintiff, and everyone else in the state, the right to an equal vote in congressional elections." Mot. at 19. Alternatively, Plaintiff claims, for the first time in his Supplemental Briefing and the Reply, Prop 50 will result in his "forced displacement" from California's 16th Congressional District ("CD 16") to California's 15th Congressional District ("CD 15"), thereby inflicting "other personal injuries." Pl.'s Supp. Br. at 7; <u>see also</u> Reply at 4-5. As discussed below, neither theory is sufficient to confer Article III standing.

First, Plaintiff's "unequal congressional districts" injury is not sufficiently particularized to support Article III standing. To the extent Plaintiff's alleged harm is the dilution of his vote, "that injury is district specific." <u>Gill v. Whitford</u>, 585 U.S. 48, 66 (2018). Therefore, Plaintiff "cannot sue to invalidate the whole State's legislative districting map;" rather, he may, at most, seek relief for his individual district. <u>Id.</u> at 66-67 (citing <u>Ala. Legis. Black Caucus v. Alabama</u>, 575 U.S. 254, 262 (2015)). Plaintiff nonetheless seeks to assert statewide injury and seeks statewide relief. Specifically, Plaintiff alleges Prop 50 "will dilute <u>every</u> California[n]'s voting power," and, thus, Prop 50's implementation must be "immediately" enjoined across all of California's congressional districts. Mot. at 26, 28 (emphasis added); <u>see also</u> <u>id.</u> at 21 (alleging Defendants are "intentionally disadvantaging political opponents and diluting [the] voting power of Californians who reside in <u>every</u> district across the State" (emphasis added)); <u>id.</u> at 6 (asserting Prop 50 "abridges the equal protection rights of [Plaintiff] and <u>all</u> California residents" (emphasis added)). These allegations amount to nothing more than a "generalized grievance against governmental conduct of which he . . . does not approve," <u>Gill</u>, 585 U.S. at 66 (citation modified). Hence, Plaintiff's "unequal congressional district" injury is insufficient to establish an injury in fact for the purposes of standing. <u>See, e.g.</u>, <u>id.</u> at 69-72 (holding plaintiffs who asserted statewide harms from partisan gerrymandering failed to allege a particularized injury); <u>Wash. Election Integrity Coal. United v. Hall</u>, 634 F. Supp 3d 977, 983-84 (W.D. Wash. 2022) (finding plaintiffs' "general allegations of election irregularities that affected the votes of all 'qualified electors'" were insufficient to establish standing); <u>Bowyer v. Ducey</u>, 506 F. Supp. 3d 699, 712-13 (D. Ariz. 2020) (concluding plaintiffs failed to allege a particularized and redressable vote dilution injury); <u>Donald J. Trump for President, Inc. v. Cegavske</u>, 488 F. Supp. 3d 993, 1000 (D. Nev. 2020) (finding plaintiffs' allegations of vote dilution were "impermissibly generalized").

Moreover, even assuming Plaintiff's "unequal congressional districts" injury is particularized, Plaintiff does not make a clear showing of an individual vote dilution injury. "Vote dilution in the <u>legal</u> sense occurs only when disproportionate weight is given to some votes over others within the same electoral unit." <u>Election Integrity Project Cal., Inc. v. Weber</u>, 113 F.4th 1072, 1087 (9th Cir. 2024) (citing <u>Short v. Brown</u>, 893 F.3d 671, 676 (9th Cir. 2018)). Thus, a vote dilution injury under the Equal Protection Clause occurs when a district is overpopulated relative to other districts in the state, resulting in the "undervaluation of the votes of those living there." <u>Reynolds v. Sims</u>, 377 U.S. 533, 563 (1964). While Plaintiff contends Prop 50 will "severely dilute[]" his vote, he does not set forth facts or allegations showing his district would be overpopulated relative to others in California.

Rather, he simply alleges his district "will likely be unequal in population to other districts" under Prop 50.  Mot. at 24; see also Sharma Decl. at 3 (broadly asserting "serious questions as to whether the Proposition 50 congressional maps are drawn with 'precise statistical equality'").  Hence, Plaintiff's bare assertions of speculative harm without any specific facts of individual vote dilution are insufficient to establish an injury in fact.  See Murthy, 603 U.S. at 67 n.7 (holding plaintiffs failed to carry their burden of setting forth "specific facts" establishing a likelihood of standing); see also Mussi v. Fontes, No. CV-24-01310-PHX-DWL, 2024 WL 4988589, at *6 (D. Ariz. Dec. 5, 2024) (explaining vote dilution "requires a point of comparison" between districts to be a basis for standing).

Second, Plaintiff has not made a clear showing of his alleged "forced displacement" injury. Plaintiff contends his "displacement" from CD 16 to CD 15 will (1) force him to "move from a known member to an unknown member of Congress," (2) "limit[] his opportunities to run for office in his familiar neighborhoods," and (3) harm him as a taxpayer "by the State expending public funds on improper districts."  Pl.'s Supp. Br. at 7; see also Reply at 4-5.  As an initial matter, it is disputed whether Prop 50, if passed, would in fact "displace" Plaintiff from CD 16 to CD 15.[4]  See, e.g., Murthy, 603 U.S. at 64-65 (holding a plaintiff failed to satisfy the burden at the preliminary injunction stage of showing the alleged injury was "likely traceable" to the challenged action).  Nonetheless, even accepting Plaintiff's allegations as true, Plaintiff "must do more than simply allege a nonobvious harm"; he "must explain how the elements essential to standing are met."  Va. House of Delegates v. Bethune-Hill, 587 U.S. 658, 663 (2019) (citing Wittman v. Personhuballah, 578 U.S. 539, 543-46 (2016)); see also Perry v. Newsom, 18 F.4th 622, 634 (9th Cir. 2021) (holding plaintiffs failed to establish standing where "the record [was] devoid of the 'factual showing of perceptible harm'" (quoting Lujan, 504 U.S. at 566)).  Here, Plaintiff fails to offer even a cursory analysis of whether and how his alleged "forced displacement" injury satisfies the concreteness, particularization, and imminence requirements for an injury in fact.  For example, Plaintiff cites to no authority recognizing this injury as legally cognizable for the purposes of standing.  See, e.g., Drake v. Obama, 664 F.3d 774, 782 (9th Cir. 2011) ("A taxpayer must demonstrate a nexus between the challenged spending and the constitutional right in order to establish taxpayer standing." (citing Hein v. Freedom From Religion Found., Inc. 551 U.S. 587, 605 (2007))).  Moreover, Plaintiff does not explain why his "forced displacement" injury – which, like his "unequal congressional districts" injury, is district specific – confers standing for the sweeping statewide injunctive relief he seeks.  See Cuno, 547 U.S. at 353 ("The remedy must of course be limited to the inadequacy that produced the injury in fact

---

[4] Real party in interest the California Legislature contends Plaintiff's allegations of "forced displacement" are unlikely to be true "because the boundaries of proposed CD 15 are the same as the boundaries of the present District 15."  Legis.'s Supp. Br. at 7; see also Connelly Decl. ¶ 4.  When evaluating a factual challenge to the court's subject matter jurisdiction, the court "need not presume the truthfulness of the plaintiffs' allegations," White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000), and may consider evidence outside the pleadings, see Leite v. Crane Co., 749 F.3d 1117, 1121-22 (9th Cir. 2014).  Because the issue of Plaintiff's alleged displacement is not "intertwined with the merits" of his Equal Protection claims, the Court need not accept the truth of Plaintiff's "forced displacement" allegations.  Bowen v. Energizer Holdings, Inc., 118 F.4th 1134, 1143 (9th Cir. 2024) (quoting Leite, 749 F.3d at 1122).  Accordingly, in light of the evidence provided by the California Legislature, Plaintiff fails to show his "forced displacement" is "likely traceable" to Prop 50 for the purposes of satisfying the causation requirement of standing at the preliminary injunction stage.  Murthy, 603 U.S. at 66.

---

. . . ." (citation modified) (quoting <u>Lewis v. Casey</u>, 518 U.S. 343, 357 (1996))).  Without more, Plaintiff's conclusory "forced displacement" injury is insufficient to establish an injury in fact.

* * * * *

Accordingly, Plaintiff has failed to establish an injury in fact to support Article III standing, and this Court, therefore, lacks jurisdiction to hear Plaintiff's claims.  See <u>Lujan</u>, 504 U.S. at 561 (holding a plaintiff must establish standing to invoke federal jurisdiction).

**B.    THE COURT MAY DISMISS PLAINTIFF'S CLAIMS WITHOUT A THREE-JUDGE PANEL**

**1.    Applicable Law**

Under 28 U.S.C. § 2284 ("Section 2284"), "[a] district court of three judges shall be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body."  28 U.S.C. § 2284(a).  However, "[a] three-judge court is not required where the district court itself lacks jurisdiction of the complaint or the complaint is not justiciable in the federal courts."  <u>Shapiro v. McManus</u>, 577 U.S. 39, 44-45 (2015) (quoting <u>Gonzalez v. Automatic Emps. Credit Union</u>, 419 U.S. 90, 100 (1974)).  Hence, a district court may properly deny a request for a three-judge panel where "the district court lack[s] jurisdiction to hear [the p]laintiffs' claims under Article III."   <u>Citizens for Fair Representation v. Padilla</u>, 815 F. App'x 120, 124 (9th Cir. 2020).

**2.    Analysis**

Here, the Court finds it lacks jurisdiction to hear Plaintiff's claims under Article III. Accordingly, the Court may dismiss Plaintiff's claims for lack of jurisdiction without convening a three-judge panel under Section 2284.  <u>See, e.g.</u>, <u>Padilla</u>, 815 F. App'x at 124 (affirming a district court's denial of a request for a three-judge panel where the plaintiffs lacked standing); <u>Garcia v. 2011 Legis. Reapportionment Comm'n</u>, 559 F. App'x 128, 135 (3d Cir. 2014) (same).

**V.**
**<u>CONCLUSION</u>**

For the reasons set forth above, Plaintiff's Motion and Request are **DENIED** because this Court lacks jurisdiction over Plaintiff's claims.  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  Accordingly, Plaintiff's Complaint is **DISMISSED** with leave to amend.

**No later than fourteen (14) days from this order**, Plaintiff shall file a First Amended Complaint.  If Plaintiff chooses to file an amended complaint, Plaintiff shall lodge as an exhibit a redlined version of the amended pleading indicating all additions and deletions of material. **Plaintiff is expressly warned that failure to timely file a First Amended Complaint may result in sanctions including dismissal for failure to prosecute and comply with Court orders.**  <u>See</u> Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED**.